No. 24-10178

IN THE
UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

————————————

CHASE AND MARJORIE PEDEN,

Plaintiffs-Appellants,

v.

GLENN STEPHENS, R.L. "BUTCH" CONWAY,
and LOU SOLIS,

Defendants-Appellees.

————————————

On Appeal from the United States District Court for the
Northern District of Georgia, Atlanta Division
District Court Case No. 1:18-cv-05861-TWT

————————————

**Appellants' Brief**

————————————

Deborah V. Haughton
HAUGHTON LAW, LLC
533-D Johnson Ferry Road
Suite 450
Marietta, Georgia 30068
(470) 997-9790 (phone)

Counsel for Appellants Chase and Marjorie Peden

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1, Appellants Chase and Marjorie Peden hereby state the following individuals and entities have an interest in the outcome of this appeal:

Apollo Global Management ("APO")

Carothers & Mitchell, LLC

Carothers, Richard A.

Clyde, Thomas

Conway, R.L. "Butch"

Couch, Angela

Cox Enterprises

Cox Media Group, Inc.

Gaither, Lesli

Haughton, Deborah V.

Haughton Law, LLC

Kilpatrick Townsend & Stockton LLP

Mitchell, Thomas M.

Peden, Chase

Peden, Marjorie

Solis, Lou

Stephens, Carole

Stephens, Glenn

Thomas, Tony

Hon. Thrash, Thomas W. Jr.

Waymire, Jason C.

Williams, Morris & Waymire

Williams, Terry Eugene

Plaintiff-Appellant does not have a parent corporation and is not a publicly held corporation.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is warranted in this case because it raises significant legal issues regarding the insufficiency of notice required by procedural due process in a public employee's pretermination and deprivation of liberty interest contexts. The specific issues regarding notice may be ones of first impression in the Court, as a dearth of case law exists in the Circuit on the sufficiency of both a pretermination notice and notice when stigmatizing information is published in deprivation of a public employee's liberty interest. Furthermore, the facts in this case are of a degree of gravity and complexity that warrants oral argument, as the District Court failed to take important facts (and inferences therefrom) into consideration in ruling upon Appellees' respective Motions for Summary Judgment.

## **STATEMENT OF JURISDICTION**

Jurisdiction is proper in this case under 28 U.S.C. §§ 1331 and 1367, as this appeal arises from a grant of summary judgment in the United States District Court for the Northern District of Georgia, alleging violations of 42 U.S.C. § 1983 and pendant state law claims. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. The District Court entered a final judgment granting Glenn Stephens's, Sheriff R.L. ("Butch") Conway's, and Chief Deputy Lou Solis's respective motions for summary judgment on December 18, 2023. Doc. 234. A notice of appeal was timely filed on January 17, 2024. Doc. 239.

## <u>TABLE OF CONTENTS</u>

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT** ................................................................1

**STATEMENT REGARDING ORAL ARGUMENT** ...........................................2

**STATEMENT OF JURISDICTION** ....................................................3

**TABLE OF CONTENTS** ................................................................4

**TABLE OF AUTHORITIES** ............................................................6

**STATEMENT OF THE ISSUES** ........................................................8

**STATEMENT OF THE CASE** ...........................................................9

   I.   COURSE OF PROCEEDINGS AND DISPOSITION BELOW ....................9

   II.   STATEMENT OF FACTS .......................................................12

   III.  STANDARD OF REVIEW FOR EACH CONTENTION ...........................19

**SUMMARY OF THE ARGUMENT** ................................................19

**ARGUMENT AND CITATIONS OF AUTHORITY** ........................................22

   I.   THE DISTRICT COURT ERRED IN FINDING THAT SHERIFF BUTCH CONWAY WAS NOT A PARTY TO COUNT ONE OF THE PEDENS' FIRST AMENDED COMPLAINT. ...............................................22

   II.  THE DISTRICT COURT ERRED IN FINDING NO VIOLATION OF MR. PEDEN'S PROCEDURAL DUE PROCESS IN THE MANNER OF HIS TERMINATION. .................................................................25

      *A.*   *The District Court failed to make all factual inferences in Mr. Peden's favor.* ...........................................................................25

      *B.*   *The pretermination notice provided to Mr. Peden did not satisfy the requirements of procedural due process because he was not provided the real*

*reason for his termination and thus had no meaningful opportunity to respond. 28*

III.  CONTRARY TO THE DISTRICT COURT'S FINDING, MR. PEDEN WAS GIVEN NO NOTICE OR OPPORTUNITY TO BE HEARD ABOUT THE DEPRIVATON OF HIS LIBERTY INTEREST IN HIS NAME OR REPUTATION. .................................................................................33

IV.  THE DISTRICT COURT ERRED IN FINDING THAT THE PEDENS FAILED TO STATE A FOURTEENTH AMENDMENT VIOLATION IN COUNT TWO OF THE AMENDED COMPLAINT. .........................................34

V.   THE DISTRICT COURT MISCONSTRUED MR. PEDEN'S DEFAMATION CLAIM AGAINST THE APPELLEES, AND THUS IT APPLIED UNRELATED FACTS AND AN INCORRECT STANDARD OF LAW TO ITS ANALYSIS. ....................................................................................36

VI.  THE PEDENS SHOULD HAVE BEEN ALLOWED TO AMEND THEIR COMPLAINT SINCE THEIR PROPOSED AMENDMENT WAS TIMELY MADE UNDER THE CIRCUMSTANCES. ........................................................39

**CONCLUSION**................................................................................................**39**

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ..............................24

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ...........................................22

*Buxton v. Plant City*, 871 F.3d 1037, 1042-43 (11th Cir. 1989) .............................33

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985)...................................28

*Dyer v. Wal-Mart Stores, Inc.*, 535 Fed. Appx. 839, 840 (11th Cir. 2013).............18

*Embree v. Wyndham Worldwide Corp.*, 779 Fed. Appx. 658, 662 (2019) .............39

*Galbreath v. Hale Cty.*, 754 Fed. Appx. 820, 827 (11th Cir. 2018)..................30, 31

*Hein v. Kimbrough*, 545 F. Appx. 926, 928 (11th Cir. 2013) ..................................28

*Lofton v. Sec'y of the Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th
Cir. 2004) ..........................................................................................................24

*Lyons v. Georgia-Pacific Corp. Salaried Emples. Ret. Plan.*, 221 F.3d 1235, 1245-
46 (11th Cir. 2000).............................................................................................22

*Mathis v. Cannon*, 276 Ga. 16, 20-21 (2002)..........................................................36

*Rodriguez v. City of Doral*, 863 F.3d 1343, 1353 (11th Cir. 2017) ..................30, 31

*Smith v. DiFrancesco,* 341 Ga. App. 786, 789 (2017)............................................37

**STATUTES**

Fed. R. Civ. P. 10(b)................................................................................................22

Fed. R. Civ. P. 15(a)(2) ..............................................................................22

Fed. R. Civ. P. 8(d)(1) ........................................................................19, 22

O.C.G.A. § 51-5-4(a)(3) ............................................................................37

## STATEMENT OF THE ISSUES

(1) Whether the District Court erred when it found that Sheriff Butch Conway was not a named party in Count One of Plaintiffs' First Amended Complaint, or in the alternative, whether the District Court erred in denying Plaintiffs the ability to amend the Count's heading to include him.

(2) Whether the District Court erred when it accepted the Defendants' facts without regard for Plaintiffs' factual allegations and held that Chase Peden was given pretermination notice and a meaningful opportunity to be heard where the notice provided was false.

(3) Whether the District Court erred when it accepted the Defendants' facts without regard for Plaintiffs' factual allegations and found that the notice given to Chase Peden regarding the appeal of his termination also served as notice of a hearing of deprivation of his liberty interest in his name or reputation even though the notice was silent as to the deprivation.

(4) Whether the District Court erred in finding that Glenn Stephens did not violate the Pedens' constitutional right to access the judicial system by influencing the district attorney's decision not to prosecute his wife Carole Stephens for stalking or harassment, again failing to construe all facts and inferences in Plaintiffs' favor.

(5) Whether the District Court erred in misconstruing Mr. Peden's defamation claim against Appellees as one related to the release of his personnel file rather than

related to the source of the tip to reporter Tony Thomas and thus applying the wrong facts and an incorrect standard to its ruling.

## STATEMENT OF THE CASE

### I. COURSE OF PROCEEDINGS AND DISPOSITION BELOW

Chase and Margie Peden filed a complaint in the District Court on December 21, 2018. Doc. 1. In their complaint they alleged claims under 42 U.S.C. § 1983 and 1985, as well as state court claims for defamation and intentional infliction of emotional distress.

The Pedens amended their complaint as a matter of right on January 23, 2019. Doc. 9. They did not attempt to amend again until they sought leave to amend on September 20, 2019. Doc. 66. On the same day, third-party Tony Thomas filed his motion to quash his deposition subpoena. Doc. 69.

On October 28, 2019, the District Court issued an order denying as untimely the Pedens' motion to amend their complaint, Doc. 93, and an order granting third party Tony Thomas's motion to quash his deposition subpoena. Doc. 95.

Thereafter, Appellees Glenn Stephens, Butch Conway, and Lou Solis filed their respective motions for summary judgment. Docs. 127, 128, and 129. The Court granted these motions. Doc. 178. In granting Appellees' motions, the Court's findings of fact referenced only the Pedens' Amended Complaint and their Response to Defendants' Statement of Facts, Doc. 140-2, and the Court's conclusions of law

appeared to have been taken directly from the Appellees' respective motions. The District Court did not appear to consider Plaintiffs' Statement of Facts, Doc. 148, or Plaintiffs' responses to the motions, Docs. 140 and 141, leading to the wholesale acceptance of the facts as stated by Defendant-Appellees, rather than the appropriate standard of accepting as true Plaintiffs' facts and inferences therefrom.

Because the case was still ongoing between the Pedens and Defendant Carole Stephens, Appellees then moved for entry of final judgment, Doc. 182, which the court granted five days later without providing the Pedens time to respond.[1] The Pedens then filed a timely notice of appeal on March 3, 2021. Doc. 189.

However, when Plaintiffs appealed that final judgment, this Court held that certification under Rule 54(b) had not been properly entered as to Counts III and IV. Thus, the case returned to the district court.

The parties stipulated to the dismissal of Counts III and IV, and the district court once again entered judgment. Doc. 220. Plaintiffs appealed again, and the Eleventh Circuit noted that it might not have jurisdiction because of the still-pending count against Defendant Carole Stephens and due to the district court's failure to

---

[1] The Pedens also sued Carole Stephens for defamation as part of this litigation, and that action is still pending in the District Court. Thus, the Pedens would have opposed an entry of final judgment that served merely to fracture their case into two parts.

certify the case pursuant to Rule 54(b) after the case was sent back from this Court. Facing this obstacle, Plaintiffs voluntarily dismissed their appeal.

Plaintiffs then sought to have partial final judgment entered, pursuant to Eleventh Circuit precedent, which allowed for either an amendment of a complaint or an entry of partial final judgment under the circumstances. The district court did not grant Plaintiffs' request for partial final judgment, but it did vacate the earlier judgment, allow for amendment of Plaintiffs' complaint to omit the claims not disposed of on summary judgment, and entered final judgment on the claims disposed of on summary judgment.[2]

Plaintiffs timely appealed from that final judgment, Doc. 235, and the Gwinnett County Defendants cross-appealed from the same. Doc. 239. In their cross-appeal, they claim injury as a result of the district court preserving Plaintiffs' appellate rights and granting entry of final judgment to finally allow this case to move to appeal, claiming that Plaintiffs' motion to set aside the judgment was untimely and that the district court should not have granted it. However, they can point to no actual, current injury; they must continue to defend Plaintiffs' appeal, but they claim no actual injury from doing so. In addition, Rule 60(b)(6) allows for relief

---

[2] Plaintiffs also had alleged Counts V and VI against Defendant Carole Stephens, and the Court granted summary judgment on Count VI, leaving Count V pending for trial. Plaintiffs and Ms. Stephens settled that claim prior to trial, the lower court dismissed it once the terms of settlement were met, and thus it is not at issue in this appeal. However, Plaintiffs note that the finalizing of the settlement terms, coupled with the Eleventh Circuit's instruction about final judgment in cases with multiple defendants and ongoing claims, was the primary reason for the delay in seeking final judgment from the district court.

from a judgment for any "reason that justifies relief." The district court exercised its discretion in allowing Plaintiffs to move forward with their appeal.

## II.   <u>STATEMENT OF FACTS</u>

Chase Peden was a 14-year veteran of the Gwinnett County Sheriff's Office (hereinafter "GCSO"). Doc. 148, ¶1. It is undisputed that Chase and Margie Peden and Glenn Stephens and Carole Stephens have been married at all times pertinent to the case. Doc. 9, ¶¶ 1, 66.

Appellees concede that, as a GCSO deputy, Mr. Peden had a constitutionally protected property interest in continued employment as an employee subject to Gwinnett County Merit Board protections, and thus he could not be terminated without compliance with the procedural due process requirements of the United States and Georgia constitutions. Doc. 178, p. 14.

Appellee Glenn Stephens was and remains in the position of County Administrator for Gwinnett County, Doc. 127, ¶ 1, and Appellees Butch Conway and Lou Solis were respectively Sheriff and Chief Deputy of Gwinnett County during all times relevant to this litigation. *Id.* ¶ 2, 3.

At some point in approximately 2013-14, Mr. Peden and Mrs. Stephens entered into an ill-advised but long-term affair that lasted through mid-2017. Doc. 148 ¶¶ 4, 12. Sometime after the beginning of their affair, in 2013 or 2014, Glenn Stephens requested a copy of Mr. Peden's cell phone records from the GCSO, a fact

from which it may be inferred that Mr. Stephens knew about the affair. *Id.* ¶ 7. Furthermore, throughout their affair, Mrs. Stephens sent Mrs. Peden, her church, and her employer anonymous letters about Mr. Peden having multiple affairs; some early letters also accused Mrs. Peden herself of having an affair. *Id.* ¶ 96 *et seq.* In addition, the Pedens' children received anonymous correspondence about their father having an affair and accusing Mrs. Peden of one as well. *Id.* ¶¶ 107, 109, 124, 125.

While Mr. Peden and Mrs. Stephens gave wildly different accounts of the circumstances surrounding the end of their affair in their respective depositions, Mrs. Stephens afterward took steps to harm his personal and professional reputation by sending an anonymous letter in August 2017 to the GCSO accusing him of meeting a girlfriend while on duty. Doc. 148, ¶ 13. Mr. Peden's major at the GCSO told him at the time that the GCSO did not take anonymous letters seriously. *Id.* ¶ 14. Mr. Peden was questioned about it by an internal investigator and the matter was dropped. *Id.* ¶¶ 15, 17.

In December 2017, Mr. Peden told his supervisor that another GCSO employee had spent hours during a shift taking care of personal business. *Id.* ¶ 18. When questioned, the employee admitted to it, and data evidence of the employee's on-duty time further supported Mr. Peden's account of the incident. *Id.* ¶¶ 19-20. Nonetheless, Peden, not the other employee, was written up by his supervisors and Sheriff Conway, who personally noted on his disciplinary form that any further

instance of untruthfulness would result in termination, in direct contradiction to the logical conclusion that Peden had in fact been truthful. *Id.* ¶¶ 21-24. From this, a factfinder could infer that Sheriff Conway knew about the affair as early as December 2017 and was simply laying the groundwork for Peden's later termination.

Mrs. Stephens sent another anonymous letter to the GCSO in late December 2017, accusing Mr. Peden of again having multiple affairs and other scurrilous behavior. *Id.* ¶ 28. Mrs. Stephens's letter, in which she feigned the identity of a GCSO employee and signed it as "Michael" (referred to as the "Michael letter" in the parties' pleadings and hereinafter), accused Peden of having sex while on duty and using his handcuffs and patrol car during sexual encounters with women at his part-time (approved) security job at a Gwinnett County nightclub. *Id.*  This time, the Sheriff's office treated the anonymous correspondence very differently than Mrs. Stephens's first letter, launching a full-scale investigation into Mr. Peden, tracking his patrol car's movements, his complete cell phone records, and interviewing 18 other employees of Gwinnett County who worked with Mr. Peden. *Id.* ¶ 31. Other investigations into similar policy violations did not result in such a lengthy and involved investigation. *Id.* Ultimately, the investigation either failed to substantiate or failed to even investigate the allegations in the Michael letter. *Id.*¶¶ 32, 34-39.

Mr. Peden was informed about the investigation near its end and was

confronted with the accusations in the Michael letter by a GCSO investigator. *Id.* ¶ 52. Mr. Peden knew that Carole Stephens had written the letter since it contained details about a meeting between them, including the date and location. *Id.* ¶ 54. However, Mr. Peden did not know that Chief Solis and Sheriff Conway already knew about Peden's affair with Carol Stephens. Solis and Glenn Stephens both have admitted that Glenn Stephens called Solis and told him that the Michael letter was actually written by his wife and that she had had an affair with Peden. *Id.* ¶ 44. Further, Conway testified that he knew about the affair around the first of the year in 2018, which would have been at the beginning of the investigation. *Id.* ¶ 30.

Furthermore, after that call and even though the identity of Carole Stephens and the conversation between Glenn Stephens and Solis would have been relevant information to include in the internal investigative report, Mrs. Stephens's name appears nowhere in it, not even as the complainant. Doc. 146-4. Also absent from the report is any mention of Glenn Stephens's call to Chief Solis. *Id.* These facts are sufficient to create an inference that Glenn Stephens asked Solis to keep his and his wife's names out of the written report.

At the close of the investigation, the only things that the GCSO investigator had unearthed about Mr. Peden was that he sometimes stopped on his way home in his patrol car for various personal errands. *Id.* ¶¶ 39-40. None of the times coincided with times he was on duty. *Id.* Further, Sheriff Conway himself testified that he too

15

made personal stops in his county car. *Id.* ¶ 42. He also testified that such stops would not be a serious disciplinary issue with a deputy. *Id.* ¶ 43. During a polygraph test, Mr. Peden also admitted to going home once or twice to have sex with his wife while on his lunch hour. *Id.* ¶ 60. Other similarly situated deputies who had committed far more heinous violations of GCSO policies were merely reprimanded. *Id.* ¶¶ 89-90. However, in March 2018, GCSO took the unusual step of terminating Mr. Peden for "Prompt Performance/Neglect of Duty," "Duty in Regard to Use of County Supplies," and "Conduct Unbecoming On/Off Duty." *Id.* ¶¶ 62, 74. However, the disposition sheets mentioned nothing about Peden's affair with Carole Stephens. Nonetheless, in their respective depositions, both Conway and Solis stated that Peden's affair with Carole Stephens was the reason for his termination. *Id.* ¶¶ 68-69.

The Pedens also discovered months later that Glenn Stephens had signed off on the purchase of an expensive, modified, customized muscle car, a Dodge Charger "Hellcat," for Sheriff Conway's use a mere 9 days after Peden's termination. *Id.* ¶ 76. They further realized that the dates between Conway's submission of the request for the car purchase and Glenn Stephens's approval of the purchase overlapped with the investigation into and termination of Mr. Peden. *Id.* ¶ 77. The District Court overlooked the inference that these facts created, namely, that there was a *quid pro quo* arrangement between the men that Conway would terminate Peden if Stephens

approved the purchase of the car.

Mr. Peden appealed his termination immediately. *Id.* ¶74. He was sent notice that he had a hearing before the Merit Board Secretary regarding his termination. *Id.* He attended this hearing, at which time he was offered resignation in lieu of termination by Gwinnett County. *Id.* ¶ 87. Still unaware of the actual reason for his termination, he accepted. *Id.*

After his termination (but before his hearing), reporter Tony Thomas with WSB-TV requested a copy of Peden's personnel file after being tipped off about the Michael letter. *Id.* ¶ 79. Days later, the lead story on WSB-TV news was about the salacious allegations contained in Carol Stephens's anonymous letter (rather than the stated reasons for Peden's termination). *Id.* ¶¶ 84-85. From this fact, it can be inferred that Mr. Thomas was "tipped off" about the Michael letter by a source that remains unknown to Mr. Peden, and since the only people who knew about the letter and had any interest in Mr. Peden's reputational harm were GCSO staff (and really just the subset of staff that included Sheriff Conway and Chief Solis, or someone directed by them) and Glenn and Carole Stephens, it can further be inferred that one of them was Tony Thomas's source. *Id.* ¶ 83. None of the Defendants admitted to being Thomas's source. However, the GCSO information officer who handled Thomas's open records request sent an email to Chief Solis noting Thomas's request and suggesting that the GCSO had a "leak," bolstering the inference that someone

within the department may have been the source. *Id.* ¶ 82.

After Mr. Peden's termination, Mrs. Stephens continued to send Mrs. Peden and the Pedens' children anonymous letters and intentionally came up behind and bumped Mr. Peden at a public event. *Id.* ¶¶ 123-127. Mrs. Peden, who by this time was aware of her husband's affair with Carole Stephens, became increasingly concerned that Mrs. Stephens had not stopped trying to contact them even after the affair had ended and worried that Mrs. Stephens might try to harm them. *Id.* ¶ 128. Thus, in 2018, the Pedens went to the Gwinnett County District Attorney requesting that he press charges against Carole Stephens for stalking or criminal harassment. *Id.* Instead of doing so, District Attorney Danny Porter went down the hall of the Gwinnett Justice & Administration Center to Glenn Stephens's office and discussed the Pedens' complaints with him. *Id.* ¶ 132. He then declined to press charges.[3] *Id.* ¶ 143. The Pedens requested and were provided with a copy of the district attorney's investigative file on Carole Stephens, and upon reading it, they learned that Solis told the investigators that Glenn Stephens had asked that his wife's name be kept out of the investigative report. *Id.* ¶ 78. This statement constituted the first time the Pedens were aware that the GCSO leadership, specifically Conway and Solis, knew

---

[3] Porter was a party to the complaint because he refused to properly investigate the Pedens' claims and to prosecute Carole Stephens, but he was dismissed on the grounds of prosecutorial immunity. Due to the largess of this immunity defense, Plaintiffs opted not to appeal Porter's dismissal.

about the affair before terminating him, and they realized that the affair was the reason for Peden's termination. Their suspicions were confirmed when, in his deposition, Conway was asked what policy Peden violated to lead to his termination, and he answered, "[H]e was a married man having an affair with a married woman." *Id.* ¶ 68.

## III.    STANDARD OF REVIEW FOR EACH CONTENTION

Orders on summary judgment are reviewed *de novo*. Thus, the Court should review the District Court's decisions regarding Conway's inclusion in Count One of the Complaint, the issues relating to pretermination notice and notice of deprivation of a liberty interest, Glenn Stephens's liability for improper influence over the district attorney under this standard, and Peden's defamation claim against Appellees under this standard.

The denial of the Pedens' motion to amend is reviewed under an abuse of discretion standard; however, an appellate court exercises *de novo* review as to the underlying legal conclusion that an amendment to the complaint would be futile. *See Dyer v. Wal-Mart Stores, Inc.*, 535 Fed. Appx. 839, 840 (11th Cir. 2013).

## SUMMARY OF THE ARGUMENT

As a practical matter, the initial issue that the Pedens raise regards the District Court's finding in granting summary judgment to Conway was that Conway was not a party to Count One simply because his name was inadvertently omitted from the

count's heading. This finding was clearly erroneous, as it applied an overly technical requirement, in contravention of Fed. R. Civ. P. 8(d)(1), to the complaint rather than looking to the legal and factual substance of the count, and the Pedens' other filings, to determine if Sheriff Conway was already on notice of the claim against him.

Fundamentally, in ruling on Appellees's motions for summary judgment, the District Court applied a standard to Plaintiffs that was impossible to meet and resulted in an erroneous decision. Rather than looking to the Plaintiffs' Statement of Material Facts or their legal argument, the District Court looked only to the allegations made in Plaintiffs' Amended Complaint and their Response to Defendants' Statement of Facts. Therefore, instead of requiring simply notice pleading, the District Court required the complaint contain fully fleshed out arguments and evidence such as might be presented at trial. This standard disregarded the facts that were developed through discovery, essentially mooting the entire discovery process for Plaintiffs and freezing their claims in time on the date upon which the Amended Complaint was filed (long before discovery began).

The pretermination notice provided to Chase Peden did not satisfy the basic requirements of procedural due process since the reasons provided to Mr. Peden for his termination were pretextual. Where a pretermination notice, as here, does not provide a public employee with the actual reasons for his termination, it procedurally mars everything that comes after it and does not provide the employee with an

adequate remedy from the State.

The District Court erred in finding that procedural due process was met with regards to the deprivation of Mr. Peden's liberty interest in his name or reputation. The notice and hearing regarding Peden's post-termination hearing could not have served "double duty" as proper notice of the release of stigmatizing information to the public, and thus no procedural due process standards were met regarding the deprivation of Mr. Peden's liberty interest.

To the extent that the inclusion of Sheriff Conway as a party to Count One rests upon the inclusion of his name in the heading of the count, the District Court abused its discretion in denying the Pedens' motion to amend to correct this error. The Pedens did not realize that Conway's name had been inadvertently omitted from the heading of Count One until they took Conway's deposition, also near the close of discovery. Thus, their motion to amend was not untimely, as it was made as soon as practicable after these facts became known to them.

The District Court's order on appellee's motions for summary judgment on the defamation count revealed the Court's misconstrual of Mr. Peden's claim. In doing so, the District Court erred in its analysis of the claim, focusing on the release of Peden's personnel file to a reporter rather than the tip provided to the reporter to spur his open records request in the first place. A correct analysis of the claim and the facts supporting it require a different result than the District Court reached.

## ARGUMENT AND CITATIONS OF AUTHORITY

## I.    THE DISTRICT COURT ERRED IN FINDING THAT SHERIFF BUTCH CONWAY WAS NOT A PARTY TO COUNT ONE OF THE PEDENS' FIRST AMENDED COMPLAINT.

In its Opinion and Order granting Defendant-Appellees' motions for summary judgment, the District Court "agree[d] with the Defendants that Conway was not named as a Defendant in Count One." Doc. 178, p. 12. In so doing, the Court made no other factual or legal findings, and this Court may review the finding *de novo* since it is part of the Court's decision on summary judgment. The District Court erred in finding that Conway was not named in the Complaint because his name was inadvertently omitted from the count's heading. Doc. 9, p. 32. In fact, the District Court's finding essentially functioned as a pre-summary judgment dismissal of Mr. Peden's § 1983 claims against Conway since the Court's finding swept the count to the side and allowed the District Court to avoid making findings of fact and conclusions of law about Conway's role in the violations of § 1983.

However, a cursory review of the heading shows an out-of-place comma, suggesting that Conway's name was originally included but was deleted. *Id.* More importantly, the body of the Count clearly names Conway as a party who caused harm to Peden. For example, the penultimate paragraph of the count claims: "Thus, Glenn Stephens, **Butch Conway**, and Lou Solis, acting under color of law through the cloak of their positions as Gwinnett County Administrator, Sheriff, and Chief

Deuputy [sic], have violated Peden's constitutional due process rights by causing reputational damage to Peden in conjunction with the Sheriff's Department's termination of Peden's employment" (emphasis added). *Id.* The language of the count clearly shows that Conway was intended to be a party to Count One. To hold otherwise is to place a technical requirement on pleadings that contravenes Fed. R. Civ. P. 8(d)(1), which states that "[n]o technical form is required." Since headings of the various counts of a complaint are a "technical" form not required by the aforementioned rule or Fed. R. Civ. P. 10(b), the District Court's finding that Conway was not a party to Count One, despite the clearly alleged harm in the body of the Count, is erroneous.[4] *Cf. Lyons v. Georgia-Pacific Corp. Salaried Emples. Ret. Plan.*, 221 F.3d 1235, 1245-46 (11th Cir. 2000) (analogous finding that headings are not dispositive in statutory interpretation). The body of Mr. Peden's Count One claim against Sheriff Conway was legally sufficient under the Supreme Court's pleadings standards, as the allegations against Conway in Count One provided "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[4] The Pedens attempted to rectify the omission of Conway's name in their motion to amend (Doc. 66) filed shortly after the omission became known to them during discovery. However, the Court denied the motion as untimely (Doc. 93). Thus, the Court granted no viable means for the Pedens to correct the error, instead placing them between the proverbial rock and a hard place rather than freely granting leave to amend as "justice so requires." Fed. R. Civ. P. 15(a)(2).

Furthermore, Conway cannot reasonably argue a failure of notice of Count One's inclusion of him as a party, as he was identified as a party to Count One in the Pedens' Initial Disclosures (Doc. 26, p. 5) and in the parties' Joint Preliminary Report and Discovery Plan (Doc. 20, p. 2). Further, significant lines of questioning in his deposition referenced facts relevant to Count One, and he made an argument relating to Count One in his motion for summary judgment (noting that he was doing so in case the Court found that he was indeed named in the count). Doc. 128, p. 8, fn. 1. The following paragraphs of the Amended Complaint contained factual allegations about Conway that related to the legal allegations of Count One: 39, 40, 56, 58, 59, 66, 69, 89, and 90. Doc. 9, pp. 12-13, 18-19, 21, 23, and 30.

Finally, it would severely prejudice the Pedens if Conway is omitted from Count One, as he was the final decision-maker in Peden's termination and admitted outright in his deposition that he fired Peden because of his affair with Carole Stephens, rather than the reasons provided on the termination notices. As Sheriff, he also was ultimately responsible for the deprivation of Peden's liberty interest in his reputation, as he presided over the entirety of the GCSO, from which the tip about the Michael letter originated (if it did not originate from the other Defendants). Even if Chief Solis or another individual made the call to include the Michael letter in Peden's personnel file, the final authority rested with Conway. Thus, the Pedens' § 1983 claims under Count One would be hampered without the inclusion of Conway,

who played a significant role in the harm caused to Mr. Peden.

## II.   THE DISTRICT COURT ERRED IN FINDING NO VIOLATION OF MR. PEDEN'S PROCEDURAL DUE PROCESS IN THE MANNER OF HIS TERMINATION.

### A.   The District Court failed to make all factual inferences in Mr. Peden's favor.

On summary judgment, the Court must draw all inferences from the facts in the light most favorable to the nonmoving party. *Lofton v. Sec'y of the Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004). If there is a dispute about material facts and inferences, an entry of summary judgment is precluded. *Id.* (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

Here, a close reading of the District Court's decision reveals that the facts relied upon by the Court were taken almost exclusively from the Defendant-Appellees' statement of facts. In the many instances where the Pedens admitted in a limited way to the statement as presented and offered explanatory or expositional limiting language, the District Court ignored it. The District Court also failed to draw all inferences in favor of the Pedens.

For instance, the Court, in discussing the December 2017 disciplinary write-up of Mr. Peden, completely disregarded the Pedens' facts showing that Mr. Peden did not simply "dispute" the finding of untruthfulness, but that the data showed that he had not been untruthful. Doc. 178, p. 3. The Court ignored the fact that, despite the data supporting Peden's claim, Sheriff Conway noted on his form that any further

25

instance of untruthfulness would result in immediate termination. Further, the Court ignored the facts that this unprecedented disciplinary action occurred the week before Mrs. Stephens sent the Michael letter, that Peden's reassignment happened on the very same day the letter was received, and that a full-scale investigation of Peden was begun immediately. Thus, a reasonable inference to be drawn from these facts is that Sheriff Conway and Chief Solis already knew from Mr. Stephens about Peden's affair with Carole Stephens and trumped up a disciplinary action to support the impending termination that had already been planned in concert with Mr. Stephens.

Other facts and/or inferences ignored by the District Court include:

- the inference that Mr. Stephens had in fact asked that both he and his wife's involvement be left out of the report, as they did not appear in it;

- the inference, from the sheer volume of the investigation into Mr. Peden and its attempt to find evidence of other affairs, that it was a fishing expedition into both his behavior and a method of supporting the claims made by Carole Stephens;

- the fact that, despite there being no direct evidence of conversations between Conway and Glenn Stephens, Conway knew about the affair and took action based on this knowledge;

- the inference that Conway and Glenn Stephens had made a deal that

Conway would fire Peden in exchange for Stephens's approval of a showy "muscle" car, as the two events completely overlapped;

- the fact that there was no evidence in the investigative report to support Peden's termination based on neglect of duty since his colleagues stated that he was reliable and did his job;

- the fact that other members of the GCSO sometimes stopped in their cars on their way to or from work, up to and including Sheriff Conway himself, and that Sheriff Conway testified that this would not be a terminable offense;

- the resulting inference from the aforementioned facts that they were pretextual reasons for Peden's termination; and

- the fact that other deputies who had had affairs while on duty (including one deputy who had sex with another employee in the GCSO offices) were not terminated.

Importantly, **in omitting Sheriff Conway from Count One of the Complaint, the District Court apparently disregarded his admission that he terminated Peden because of the affair** rather that the reasons provided on the GCSO disposition sheets—potentially the most material fact regarding the legal insufficiency of Peden's notice (although Solis made a similar admission during his deposition testimony). Troublingly, the District Court did not make any factual

27

findings about the truthfulness or validity of the charges in the disposition sheets, which would have clearly been material to the substantive law of the case, given that Peden challenged the notice he was provided.

Had the District Court taken these facts and inferences into account, it would not have been able to arrive at its finding that the notice provided to Peden was legally sufficient under procedural due process safeguards. Because the Court failed to do so, it found that Mr. Peden was provided written notice of the charges against him and was provided an explanation of the evidence against him. Doc. 178, p. 15. However, Conway's and Solis's respective admissions that the affair was their primary—indeed, only—reason for terminating Peden require a finding that the notice was false. Further, the inference to be made therefrom is that the termination was a result of Mr. Stephens's coercion and/or a *quid pro quo* arrangement between Stephens and Conway, so the District Court's findings are clearly erroneous.

**B. <u>The pretermination notice provided to Mr. Peden did not satisfy the requirements of procedural due process because he was not provided the real reason for his termination and thus had no meaningful opportunity to respond.</u>**

In addition to the erroneous factual findings outlined above, the District Court erroneously applied the law to the facts at hand in finding that Mr. Peden's pretermination notice was legally sufficient and thus that Mr. Peden further had an opportunity to respond to the reason for his termination. As discussed above, the District Court utterly bypassed Peden's challenge to the pre-termination notice

provided him and instead focused on the fact that there was an adequate *post*-termination remedy available to him, citing *Hein v. Kimbrough*, 545 F. Appx. 926, 928 (11th Cir. 2013).

However, this is a misapplication of the law to the facts presented herein. In their Statement of Facts and in their Response to the respective Motions for Summary Judgment, the Pedens repeatedly argued that notice was improper and insufficient and provided specific factual citations to support that claim. While it is true that the Pedens specifically pleaded in their Amended Complaint that Mr. Peden was not provided the opportunity for a name-clearing hearing, that proposition was based wholly on the fact that he was not told the real reason for his termination and therefore could not have had a *meaningful* opportunity to respond to it.[5]

In fact, notice that fails to provide the employee with the reasons for his termination does not satisfy due process. The seminal case in the pre-termination context is *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), although in that case the Supreme Court was more concerned with the pre-termination hearing since the terminated employee did not challenge his notice. However, the Court's reasoning there is instructive to insufficient notice as well. The Court noted that there

---

[5] Should the Court determine that the Pedens did not plead this proposition clearly in Count One of their Amended Complaint, they would respectfully request that the Court remand the case to the District Court with instructions to allow the Pedens to amend their complaint to re-state the allegations with greater clarity.

is a "severity in depriving a person of their livelihood" and the fired worker is "likely to be burdened by the questionable circumstances under which he left his previous job," *id.* at 543, the effects of which have been sharply felt by Mr. Peden in the present case. Importantly, the Court went on to note:

> [S]ome opportunity for the employee to present his side of the case is recurringly of obvious value in reaching an *accurate* decision. Dismissals for cause will often involve factual disputes….Even where the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases, the *only meaningful* opportunity to invoke the discretion of the decision maker is likely to be ***before*** the termination takes place.

*Id.* (emphasis added) (internal citations omitted). Ultimately, the Court held that "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546. Implicit in this analysis is a recognition that the reasons for an employee's termination matter. Otherwise, a decision could not be described as accurate, and there would be no meaningful way for the employee to respond and present his side before the decision maker. Furthermore, the employer who knowingly withholds the reason for termination is improperly relieved of its constitutional duty to present the evidence it has against the employee. Applying the analysis here, due process would have required that Sheriff Conway and Chief Solis present the evidence they had about the affair to Mr. Peden, and that Peden be allowed to address that evidence before Sheriff Conway and Chief Solis (who was

the highest-ranking decision maker present at the pre-termination hearing).

Consistent with this reasoning, this Court has held that situations in which an employee was not presented with the reason for his termination constitute a deprivation of due process. In a similar situation, an employee was presented with conclusory, factually unsupported reasons for her termination and a motion made immediately thereafter in a public meeting to terminate her; under these facts, the Eleventh Circuit held that notice and meaningful opportunity to be heard were both lacking. *Galbreath v. Hale Cty.*, 754 Fed. Appx. 820, 827 (11th Cir. 2018). In a striking way, Peden's situation constitutes an even greater constitutional issue than that presented in *Galbreath*, as the Court there found that the notice lacked sufficient detail and the employee did not have time to formulate a response, and here Conway and Solis deliberately misled Peden about the reason for his termination and thus made it impossible for him to respond. When the employer fails to tell the employee why he is being terminated, the employee cannot challenge the reason for his termination. *Rodriguez v. City of Doral*, 863 F.3d 1343, 1353 (11th Cir. 2017). Furthermore, an appeal of the termination does not solve the underlying problem. *Id.* ("[W]hile Defendants suggest that, had [the employee] elected not to resign, he could have appealed his termination, it's difficult to imagine how when he was not told why he was being terminated").

The failure to provide Mr. Peden with notice that he was being terminated

because of the affair tainted every succeeding step of due process, rendering the entirety of the process meaningless. Any post-termination state remedy would not have been a remedy at all, including Mr. Peden's hearing before the Merit Board Secretary and his agreement to resign in lieu of termination. "[W]here a due process violation is already complete," post-termination process cannot remedy it. *Galbreath* at 828. Mr. Peden went into the hearing before the Merit Board Secretary still unaware of the reason for his termination, and even if he had known by that point, the due process violation was already complete upon his termination.

In the District Court, Appellees relied heavily on the fact that Peden voluntarily resigned at the hearing with the Secretary, and in fact the District Court found that Peden had voluntarily entered into a Settlement Agreement in which he resigned in lieu of termination, thereby finding as a matter of law that Peden was not deprived of his property interest without due process. Doc. 178, p. 17. However, a resignation cannot be said to be voluntary "where the employer obtains the resignation by deceiving or misrepresenting a material fact to the employee." *Rodriguez* at 1352. Indeed, such deceitfulness and misrepresentation are at the heart of Mr. Peden's due process claim. If Peden was not told the truth about his termination, he was missing a material fact and could not make an informed decision at his hearing.

Finally, although the District Court did not explicitly raise this issue, there is

no "mixed motive" basis on which the District Court could find that, even if Peden was terminated because of the affair, he was *also* terminated for the reasons provided to him. Implicit in the District Court's findings is the presumption that the GCSO disposition notices *appear to provide* the reasons for Peden's termination, as that surely is why the Court ignored Conway's and Solis's admissions that the affair fueled the termination. However, notice requires that the employee be provided with *all* the reasons for termination, especially one that is the true basis for the termination.

### III.    CONTRARY TO THE DISTRICT COURT'S FINDING, MR. PEDEN WAS GIVEN NO NOTICE OR OPPORTUNITY TO BE HEARD ABOUT THE DEPRIVATON OF HIS LIBERTY INTEREST IN HIS NAME OR REPUTATION.

Unfortunately, the District Court's muddied the notice and opportunity to be heard requirement for Peden's property interest in his employment with the notice and hearing requirements of the deprivation of his liberty interest in his name and reputation. The District Court ignored the fact that Peden received no notice before stigmatizing information about his discharge was revealed to the public. The Court merely held that, because the information was made public before the Merit Board hearing regarding Peden's appeal of his termination, the otherwise unrelated hearing served to provide Peden with all the due process required for the violation of his liberty interest.

The District Court conceded that this Court's precedent held that, under the

33

circumstances presented here, Peden's liberty interest was implicated by the release of his personnel file and he was entitled to a name-clearing hearing, citing *Buxton v. Plant City*, 871 F.3d 1037, 1042-43 (11th Cir. 1989). However, the District Court implicitly held that Peden's notice of the hearing of his *termination appeal* before the Merit Board Secretary could somehow also function in a dual capacity to inform Peden of his right to a name-clearing hearing in the liberty interest context. The problem with the holding is that nowhere on the face of the notice for the hearing of Peden's appeal does it mention Peden's right to have a name-clearing hearing about the release of stigmatizing information. In fact, it states that it is only regarding "Appeal of Termination (18-02) – Chase Peden." Doc. 108-1, Exh. 17 to C. Peden Depo. Thus, the District Court's interpretation does not comport with the requirements of due process in this context, nor does it comport with the clear language in *Buxton*, in which this Court held, simply, that "[n]otice of the right to such a [name-clearing] hearing is required." *Id.* at 1046. Since no notice was provided Mr. Peden, much less an attendant name-clearing hearing, his due process rights were violated.

### IV.    THE DISTRICT COURT ERRED IN FINDING THAT THE PEDENS FAILED TO STATE A FOURTEENTH AMENDMENT VIOLATION IN COUNT TWO OF THE AMENDED COMPLAINT.

As to Count Two of the Amended Complaint, Doc. 9, pp. 34-37, the District Court held that the Pedens made the same claim as in Count One on behalf of Chase

Peden and failed to state a separate claim for relief for Margie Peden. However, this finding is not supported by the Amended Complaint. Count Two was originally brought against Glenn Stephens and then-District Attorney Danny Porter, alleging that Porter's failure to prosecute Carole Stephens was a result of a conspiracy between the two men to protect the wrongdoer, Mrs. Stephens, while failing to provide Mr. and Mrs. Peden the protections of law enforcement and the judicial system—quite literally, a failure of equal protection under the law. After the District Court dismissed Porter, the count survived only against Glenn Stephens.

The District Court held that the Pedens did not properly state such a claim. The District Court's holding suggests that it did not find Count Two to be clear. However, nothing in the Court's holding shows that it looked to the factual allegations of the complaint to determine whether the Pedens presented sufficient facts to uphold such a claim on Mrs. Peden's behalf. Here again, the Court ignored the following facts and inferences to be drawn therefrom:

- The Pedens presented evidence to D.A. Porter that Carole Stephens had harassed their entire family, including their minor children, with anonymous correspondence accusing Chase Peden of all manner of scurrilous behavior and using an anonymous "burner" phone to text Mrs. Peden and taunt her about the affair;

- The Pedens also presented him with evidence that Carole Stephens

had "keyed" or vandalized their cars on multiple occasions;

- D.A. Porter conferred special treatment upon Glenn Stephens by going to warn him about the allegations of wrongdoing brought by the Pedens against Carole Stephens;

- When Carole Stephens was asked to meet with Porter to discuss the Pedens' claims and the D.A.'s investigation into them, Glenn Stephens was allowed to join in the meeting;

- Porter directed his investigator not to record that meeting, despite such recording being the normal operating procedure for meetings with alleged criminal perpetrators; and

- The inference from the facts above that Porter and Stephens had entered into an agreement whereby Porter would not prosecute the Pedens' criminal claims against Carole Stephens.

The totality of the above facts was sufficient as a matter of law to state a claim on both Chase and Margie Peden's behalf that their right to access to the judicial system was violated by Glenn Stephens, and thus the District Court erred.

## V.    THE DISTRICT COURT MISCONSTRUED MR. PEDEN'S DEFAMATION CLAIM AGAINST THE APPELLEES, AND THUS IT APPLIED UNRELATED FACTS AND AN INCORRECT STANDARD OF LAW TO ITS ANALYSIS.

The District Court misconstrued Mr. Peden's defamation claim, finding that the release of Peden's personnel file could not constitute defamation. However, this

analysis disregarded the initial publication of the defamatory statements to reporter Tony Thomas, which led to Thomas requesting Peden's personnel file. Peden does not dispute that the release of his personnel file occurred pursuant to Georgia open records law (apart from the constitutional issues raised in Part C, above).

The District Court's analysis completely turned on whether the release of the personnel file constituted defamation. However, the Pedens' primary focus is on the source of Thomas's knowledge of Peden's termination and of the existence of the Michael letter in the first instance. In other words, the initial publication of the defamatory information happened *before* Thomas made the open records request. What happened afterward is not at issue.

In Georgia, there are four elements to a defamation claim: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Mathis v. Cannon*, 276 Ga. 16, 20-21 (2002). As to the first element, Appellees concede that Mr. Peden stated in the GCSO investigation that almost everything in the Michael letter was false (as he also stated in deposition testimony). Doc. 140-2, p. 13. As to the second, there is no dispute that any communication to third party Tony Thomas would have been unprivileged. The third part of the analysis is satisfied by the fact that all of the Appellees knew that the Michael letter was false

on its face. They knew there was no "Michael," that the author was Carole Stephens, and that her motives were, at best, suspect. They made no attempt to independently investigate whether the claims in the letter were true, and Conway and Solis did not appear to care or notice that the GCSO investigator either did not investigate the specific claims in the letter or did not find evidence to support them. Doc. 148, pp. 11-13. Thus, it was *at least* negligent if one or more of them contacted Thomas to tell him about the letter, and more likely malicious, given the inferences to be made from the facts presented. Finally, O.C.G.A. § 51-5-4(a)(3) provides that defamation exists where statements are made that make "charges against another in reference to his trade, office, or profession, calculated to injure him therein," and pursuant to subpart (b) of the statute, "damage is inferred" when such statements are made, so no showing of special damages is necessary (although Mr. Peden does so). *See, e.g., Smith v. DiFrancesco,* 341 Ga. App. 786, 789 (2017) ("Where a statement is defamatory per se, the element of damages is inferred"). Again, there can be no real dispute that the statements were made in reference to Mr. Peden's profession and were calculated to injure him in that profession and did in fact injure him as he has been unable to find comparable work in any law enforcement or security capacity since his termination. The tip to Mr. Thomas was clearly intended to set a course of events in motion that would ruin Mr. Peden's reputation, and unfortunately, the individual who did so was successful.

## VI.   **THE PEDENS SHOULD HAVE BEEN ALLOWED TO AMEND THEIR COMPLAINT SINCE THEIR PROPOSED AMENDMENT WAS TIMELY MADE UNDER THE CIRCUMSTANCES.**

Plaintiffs sought to amend their Amended Complaint to correct the scrivener's error omitting Conway's name from the heading of Count One, adding a claim for invasion of privacy as an alternative to defamation, and adding facts concerning recent acts by the Defendants against Chase Peden. The District Court denied this motion as untimely. For purposes of this appeal, the Pedens only raise the issue of correction of the scrivener's error.

In so doing, the District Court abused its discretion. The exclusion of Conway's name in the heading (but not the body) of Count One was an oversight the Plaintiffs sought to correct, and that issue has been briefed in Part A, above. Plaintiffs sought to correct that error within a reasonable time after discovering it. While the standard of review on summary judgment is *de novo*, the Pedens posit that the District Court's denial of this amendment also meets the more rigorous standard of abuse of discretion.

## CONCLUSION

The District Court's Orders on Appellees' summary judgment and the Pedens' motions to amend should be reversed and vacated, and this case should be remanded for further proceedings consistent with this Court's decision.

In the alternative, should the Court find that any of the Pedens' claims in the Amended Complaint require greater clarity now that discovery has ended and the parties' respective facts and legal positions have come into sharper focus, the Pedens request that this Court remand to the lower court with instructions to allow the Pedens to be able to amend their complaint accordingly.[6]

This 27th day of March, 2024.

HAUGHTON LAW, LLC


/s/ Deborah V. Haughton
Deborah V. Haughton
Georgia Bar No. 338038
Attorney for Appellants

533-D Johnson Ferry Road
Suite 450
Marietta, Georgia 30068
(470) 997-9790
debbie@haughtonlaw.net

---

[6] It bears noting, however, that the Amended Complaint was pled with sufficient precision and detail such that the Appellees felt no need to move for dismissal and had no obvious problem framing their responsive pleadings, nor did the District Court deem it necessary to *sua sponte* give the Pedens a chance to replead a more definite statement of their claims. *See, e.g., Embree v. Wyndham Worldwide Corp.*, 779 Fed. Appx. 658, 662 (2019).

## <u>CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)</u>

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Fed. R. App. P. 29(d) because it contains 8,145 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), as calculated by the word-counting feature of Microsoft Word for Mac, Version 16.48, 2021.

2. This brief complies with the typeface requirements of Fed. R. App. P.32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: March 26, 2024

<u>/s/ Deborah Haughton</u>
DEBORAH HAUGHTON

## **CERTIFICATE OF SERVICE**

I, DEBORAH HAUGHTON, do hereby certify that I have filed the foregoing Brief electronically with the Court's CM/ECF system with a resulting electronic notice to all counsel of record.

This 27th day of March, 2024.

HAUGHTON LAW, LLC


/s/ Deborah V. Haughton
Deborah V. Haughton
Georgia Bar No. 338038
Attorney for Appellants

533-D Johnson Ferry Road
Suite 450
Marietta, Georgia 30068
(470) 997-9790
debbie@haughtonlaw.net